UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GLORIA S. PENA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-1830 (ESH) |
| ) | |
| A. ANDERSON SCOTT MORTGAGE ) | |
| GROUP, INC., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND OPINION

Plaintiff Gloria S. Pena has sued defendants A. Anderson Scott Mortgage Group, Inc., ("Anderson"), American Title and Escrow Company ("ATEC"), CitiMortgage, Inc. ("CMI"), and Chase Home Finance LLC ("Chase") for violation of the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667 (2006), breach of the implied covenant of good faith and fair dealing, declaratory judgment/quiet title, and other claims related to defendants' alleged failure to disclose information to Ms. Pena about a mortgage loan created for her by Anderson. Before the Court are motions to dismiss by CMI and Anderson. For the reasons set forth herein, the Court will grant defendants' motions to dismiss plaintiff's TILA claim and remand plaintiff's remaining claims to the Superior Court of the District of Columbia.

## FACTUAL BACKGROUND

Plaintiff makes the following allegations in her complaint. Ms. Pena is domiciled in Maryland and resides in a house in Hyattsville. (Compl. ¶ 2.) Her native language is Spanish, and she has limited proficiency in English. (*Id.* ¶ 8.) She works as a seamstress, and in 2005 and

2006, her salary was approximately $44,000 per year. (*Id.* ¶¶ 8-9.) In 2005, Ms. Pena decided to buy a house in Washington, D.C., and sell her property in Maryland, on which she was making mortgage loan payments. (*Id.* ¶¶ 10-11.) Ms. Pena purchased a house in Washington, D.C., after receiving financing to buy the property for $300,000. (*Id.* ¶¶ 12-13.) However, prior to moving into it, Ms. Pena realized that the D.C. house required several major renovations and repairs in order for her and her family to live there. (*Id.* ¶ 14.) Ms. Pena undertook these renovations over the next year, refinancing the loan on her house in Maryland to pay for them, as well as the mortgage payments on her two properties. (*Id.* ¶¶ 15-16.)

In September 2006, Ms. Pena decided to refinance the loan she had taken out to purchase the D.C. property. (*Id.* ¶ 17.) Ms. Pena contacted defendant Anderson, whose employee, George Tiqui, assisted her in applying for refinancing. (*Id.* ¶ 20.) Ms. Pena alleges that when Mr. Tiqui filled out her loan application, he indicated that her monthly income was $10,800, overstating her true earnings by approximately $75,000 annually. (*Id.*) Anderson, through Mr. Tiqui, then offered Ms. Pena a $390,000 loan with a fixed interest rate of six percent. (*Id.* ¶ 21.) Prior to settlement, Ms. Pena received copies of a Good Faith Estimate pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617, which also stated that the interest rate on the Anderson loan to Ms. Pena would be six percent. (Compl. ¶ 22.) However, when Ms. Pena signed the loan documents on October 20, 2006, the interest rate was 6.5 percent. (*Id.* ¶ 23.)

After the Anderson loan settled, Ms. Pena continued to make payments on that loan and the loan on her Maryland property, though she attempted unsuccessfully to sell both properties at different times. (*Id.* ¶¶ 24, 26.) On November 1, 2006, Anderson offered Ms. Pena a second lien loan of $50,000 over the D.C. property with an interest rate of 8.775 percent and a balloon payment at the end of the loan (on December 1, 2021) of $39,789.00. (*Id.* ¶ 27.) Mr. Tiqui also

completed the second loan application for Ms. Pena, though on this form, he stated her monthly income as $8,000.  (*Id.* ¶ 28.)  The second lien loan settled on November 13, 2006.  (*Id.* ¶ 29.)

When she filed her lawsuit on August 25, 2009, Ms. Pena owed $386,301 on the first D.C. property loan and $55,680 on the second loan.  (*Id.* ¶ 33.)  On May 7, 2009, CMI, the first lien note holder, had offered Ms. Pena a one-year, "stepped-rate modification" on the first lien, valid for one year.  (*Id.* ¶ 34.)  The document purporting to modify the loan established a new unpaid principal balance of $417,400, consisting of a principal balance of $386,301, plus a total capitalized amount of $31,099.  (*Id.*)  The loan had an interest rate of two percent for the first year, and Ms. Pena was asked to make monthly payments of $1,939.  (*Id.*)  Ms. Pena signed the modification documents and sent them to CMI with her first payment of $1,939.  (*Id.*)  On June 27, 2009, Ms. Pena mailed a second check to CMI in the same amount.  However, CMI returned this check to her with the explanation that the amount was insufficient. (*Id.*, Ex. 9.)  Both of Ms. Pena's properties were in foreclosure when she filed suit.  (*Id.* ¶ 32.)

**PROCEDURAL BACKGROUND**

Ms. Pena's complaint includes eights claims, four against CMI and seven against Anderson.[1]  Ms. Pena contends that CMI and Anderson failed to comply with the disclosure requirements of TILA and breached the implied covenant of good faith and fair dealing in their interactions with her (Counts I and II).  (Compl. ¶¶ 37-48.)  Accordingly, she claims that she is entitled to declaratory judgment vesting the titles of the Maryland and D.C. properties in her name and finding that any promissory notes, deeds, and liens on the properties are null and void (Count IV).  (*Id.* ¶ 62.)  Ms. Pena also alleges breach of contract against CMI for failing to honor

---

[1] The Court dismissed Ms. Pena's claims against defendants ATEC and Chase in November 2009, based on plaintiff's failure to respond to these defendants' motions to dismiss.

the terms of the "stepped-rate modification" to her mortgage loan (Count VII). (*Id.* ¶¶ 34, 74-75.) Additionally, plaintiff has filed claims of fraudulent misrepresentation (Count III), violation of the D.C. Consumer Protection Procedures Act (Count V), negligence (Count VI), and equitable estoppel (Count VIII) against Anderson. (*Id.* ¶¶ 49-56, 63-73, 76-80.)

Plaintiff's complaint was originally filed in the Superior Court of the District of Columbia. Defendant CMI, with the consent of the other defendants, filed a notice of removal on September 25, 2009, pursuant to 28 U.S.C. §§ 1441-1453. Removal was based on this Court's federal question subject matter jurisdiction over plaintiff's TILA claim. *See* 28 U.S.C. § 1331 (granting district courts jurisdiction over claims arising under federal laws). The Court has supplemental jurisdiction over plaintiff's remaining claims, which arise under state law, because these claims are part of the controversy giving rise to plaintiff's TILA claim, *i.e.*, the refinancing and foreclosure of plaintiff's D.C. property. *See* 28 U.S.C. § 1367(a).

CMI filed a motion to dismiss all of plaintiff's claims against it for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Mem. of P. & A. in Supp. of Def. CitiMortgage, Inc.'s Mot. to Dismiss ["CMI Mem."] at 1-2.) Anderson also has filed a motion to dismiss under Rule 12(b)(6), incorporating the motions filed by CMI and ATEC and seeking to dismiss all claims against it. (A. Anderson Scott Mortgage Group, Inc.'s Mot. to Dismiss at 1.)

**STANDARD OF REVIEW**

In deciding a motion to dismiss under Rule 12(b)(6), a court may consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). As the Supreme Court held in *Ashcroft v. Iqbal*, "[t]o

4

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  "Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the 'grounds' of 'entitle[ment] to relief,' a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Gerlich v. United States Dep't of Justice*, 659 F. Supp. 2d 1, 4 (D.D.C. 2009) (quoting *Twombly*, 550 U.S. at 555-56).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted)).  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor.  *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).  "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## ANALYSIS

### I. DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S TILA CLAIM

#### A. CMI

Regulation Z implements TILA and requires a creditor to make certain disclosures, including, *inter alia*, the "annual percentage rate" on a loan.  12 C.F.R. § 226.18(e).  It also mandates that a "creditor shall make the [required disclosures] clearly and conspicuously in

writing, in a form that the consumer may keep." *Id.* § 226.17(a)(1).  Ms. Pena bases her TILA claim on the alleged failure of Anderson and ATEC to accurately disclose the substitution of a 6.5 percent interest rate in the loan note for the six percent rate stated in the pre-closing documents.  (Compl. ¶¶ 22-23, 40.)  The complaint implies that CMI, the loan note assignee, is liable for this lack of disclosure by alleging that the TILA violation is apparent on the face of the pre-closing disclosure forms.[2]  (*Id.* ¶ 40); *see also* 15 U.S.C. § 1641(a) (assignee liable only when violation is "apparent on the face of the disclosure statement").

As correctly argued by CMI, Ms. Pena's TILA claim is barred by the statute of limitations.  TILA states that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  "In closed-end consumer credit transactions, such as the one in this case, the limitations period begins to run on the date of settlement."  *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 39 (D.D.C. 2006) (citing *Postow v. OBA Fed. Sav. & Loan Assoc.*, 627 F.2d 1370, 1380 (D.C. Cir.

---

[2] In her opposition, Ms. Pena explains her allegations against CMI.  She suggests that CMI "is the real creditor" because Anderson assigned CMI the loan note on the day of settlement, thereby making Anderson a mere proxy for CMI. (Response of Pl. Gloria Pena to Def. Citi Mortgage Inc. (Citi) Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ["CMI Opp'n"] at 7.)  She then moves to amend her complaint to add additional claims and defendants and to identify CMI as a creditor on the transaction. (*Id.* at 8.)  However, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *E.g., Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)); *see also Coll. Sports Council v. Gov't Accountability Office,* 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006) ("[P]laintiff cannot amend [her] complaint *de facto* to survive a motion to dismiss by asserting new claims for relief in [her] responsive pleadings.").  Moreover, Ms. Pena's attempt to amend does not comply with Local Rule 15.1, which states that "[a] motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."  Local Civ. R. 15.1.  Indeed, the Court has no knowledge of the specific claims, defendants, or allegations plaintiff seeks to add to her complaint.  As such, the Court may only consider those claims and allegations made in the complaint in deciding CMI's motion to dismiss.  *See Coll. Sports Council*, 421 F. Supp. 2d at 71 n.16 ("[T]he Court does not, and cannot, consider claims first raised in the plaintiff's opposition.").

1980) and *Lawson v. Nationwide Mortgage Corp.,* 628 F. Supp. 804, 807 (D.D.C. 1986)). The settlement of the loan to Ms. Pena occurred on October 20, 2006. (Compl. ¶ 23). Ms. Pena did not file her lawsuit until August 25, 2009, nearly three years after settlement, clearly outside of the one-year limit.

Plaintiff's argument that the statute of limitations should be tolled in this case due to fraudulent concealment of the TILA violation is unconvincing. Under the doctrine of fraudulent concealment, if a plaintiff

> did not discover [her] injury because the defendant fraudulently concealed material facts related to its wrongdoing, then the court will deem the cause of action not to have accrued during the period of such concealment—unless the defendant shows that the plaintiff would have discovered the fraud with the exercise of due diligence.

*Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996). "In order to establish fraudulent concealment and hence to toll the running of the statute of limitations, the plaintiff must show that the defendant took 'some misleading, deceptive or otherwise contrived action' to conceal information material to the plaintiff's claim." *Id.* (quoting *Hobson v. Wilson*, 737 F.2d 1, 34 (D.C. Cir. 1984) (*abrogated on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993))). Even in a case where the defendant's underlying wrong is "self-concealing," such as a fraud, "the defendant's silence is usually not enough" to establish fraudulent concealment, unless the defendant has an affirmative duty to disclose relevant information. *Williams v. Conner*, 522 F. Supp. 2d 92, 100 (D.D.C. 2007); *see also Hobson*, 737 F.2d at 33 ("There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.") (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)). Here, plaintiff has not alleged any affirmative acts of fraudulent concealment by CMI. The only affirmative act identified by Ms. Pena is defendants' failure to comply with Regulation

Z's disclosure requirement, but this failure to disclose is the basis of the TILA claim and cannot serve as both the violation and the concealment of the violation. *See Johnson*, 451 F. Supp. 2d at 52 ("Extending the statute of limitations on non-disclosure due to a defendant's non-disclosure surely is contrary to the intention of the legislature in enacting that statute."). Moreover, Ms. Pena has not demonstrated or even alleged that CMI had an affirmative duty to her such that its silence after the loan settled became in effect an affirmative act of fraudulent concealment.[3] *See Williams*, 522 F. Supp. 2d at 100-01. Because Ms. Pena has not alleged facts sufficient to state a claim of fraudulent concealment, her TILA claim against CMI is barred by the statute of limitations, and Count I is dismissed as to CMI.[4]

**B. Anderson**

Ms. Pena claims that Anderson violated TILA when it failed to disclose the 6.5 percent interest rate on her mortgage loan in pre-closing documents. (Compl. ¶ 40.) She also alleges that Anderson, unlike CMI, had an affirmative duty as a creditor to make such a disclosure prior to settlement. (*See id.* ¶¶ 21-23, Ex. 7); *see also* 12 C.F.R. §§ 226.2(a)(17), 226.17(b)-(c) (requiring creditors to make disclosures "before consummation of the transaction," including the

---

[3] As discussed, plaintiff has argued that CMI was a *de facto* creditor and should be held to the disclosure requirements for creditors under TILA. (CMI Opp'n at 7-8.) However, nothing in plaintiff's complaint or the documents attached to it or incorporated therein suggests that CMI was the creditor of Ms. Pena's loan, as all of these documents list Anderson as the lender. (Compl. ¶¶ 18, 20-21, 23, Exs. 6-7.) The Court relies on these documents alone in deciding the instant motions. *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.

[4] CMI also argues that because it is an assignee of the loan at issue, the TILA violation must be apparent on the face of the disclosure in order for it to be liable, and that no such violation is apparent on the forms signed by Ms. Pena. (CMI Mem. at 5-7.) It further contends that Ms. Pena is not entitled to recission of the transaction because the D.C. property was never her primary residence. (*Id.* at 7.) Because the Court concludes that Count I is barred by the statute of limitations, it need not address the merits of these arguments.

"terms of the legal obligation between the parties").[5]  However, the Court concludes that Ms. Pena's claim against Anderson, filed nearly three years after settlement, is barred by TILA's one-year statute of limitations.  While silence can toll the statute of limitations if a defendant "has an affirmative duty to disclose the relevant information to the plaintiff," *Sprint Commc'ns Co.*, 76 F.3d at 1226, equitable tolling under the fraudulent concealment doctrine is not appropriate in this case because plaintiff had notice of her potential TILA claim on the day her loan settled.

"[T]he doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."  *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1494 (D.C. Cir. 1989).  It is true that notice "in the context of fraudulent concealment is close to actual notice," *Molecular Diagnostics Labs. v. Hoffmann-La Roche, Inc.*, 402 F. Supp. 2d 276, 284 (D.D.C. 2005), and consists of an "awareness of sufficient facts to identify a particular cause of action," not mere "hints, suspicions, hunches or rumors." *Hobson*, 737 F.2d at 35.  Nonetheless, Ms. Pena concedes in her complaint that when she signed the note, she had notice of the actual interest rate on her loan, and therefore, it must be concluded that she had notice of the discrepancy between that rate and the rate disclosed to her pre-settlement. (Compl. ¶ 23 (noting that plaintiff "signed documents for the aforementioned refinancing loan but now the loan had a higher fixed-interest rate of 6.5%"); *see also id.* Ex. 7 (stating interest rate of "6.500%")).  Moreover, Ms. Pena

---

[5] As discussed, non-disclosure under TILA cannot serve as both a violation and an "affirmative act" in fraudulent concealment of that violation in order to equitably toll the statute of limitations.  *See Johnson*, 451 F. Supp. 2d at 52.  However, beyond alleging that Anderson failed to disclose the applicable interest rate, plaintiff alleges that Anderson disclosed an interest rate to her, then applied a different interest rate to her loan without disclosing it.  Such action on Anderson's part could be sufficient to invoke the doctrine of fraudulent concealment.  *See id.* (lender's assurance to plaintiff as to terms of mortgage might be affirmative act under doctrine triggering tolling of TILA statute of limitations).  However, the Court need not make such a determination here, where the statute of limitations will not be tolled because plaintiff had notice of her potential claim.  *See id.* at 52-53.

cannot allege (nor does she) that she exercised due diligence in uncovering her claim, since she was in possession of loan documents clearly indicating the 6.5 percent interest rate. *See Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996) (to plead fraudulent concealment, plaintiff must allege that defendant "engaged in an on-going scheme to conceal the alleged" violation, plaintiff "did not have actual or constructive notice of the concealment," and plaintiff "exercised due diligence"). A motion to dismiss "may be granted on the basis that the action is time-barred . . . when it appears from the face of the complaint that the relevant statute of limitations bars the action." *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).

Based Ms. Pena's statements in her complaint and the documents attached thereto, the Court concludes that such dismissal of Count I as barred by the one-year statute of limitations is appropriate here. *See*, *e.g.*, *In re Roberson*, 262 B.R. 312, 321 (Bankr. E.D. Pa. 2001) (dismissing TILA claim despite allegation of fraudulent concealment of loan terms where plaintiff "could have learned of the existence of the [term] by reviewing the Promissory Note").

## II. PLAINTIFF'S REMAINING CLAIMS

The Court has dismissed plaintiff's TILA claim, and no other federal claims were filed. As such, the Court no longer has jurisdiction under 28 U.S.C. § 1331 and may dismiss the case, remand it to D.C. Superior Court, or exercise supplemental jurisdiction over the remaining claims. [6] 28 U.S.C. § 1367(c)(3); *see also Shekoyan v. Sibley Int'l,* 409 F.3d 414, 423 (D.C. Cir. 2005). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988); *see*

---

[6] The parties do not allege any other basis for jurisdiction besides 28 U.S.C. § 1331.

*also Shekoyan*, 409 F.3d at 424 ((quoting *Cohill*).  For these reasons, the Court will remand plaintiff's remaining claims to Superior Court, where Ms. Pena initially filed the case.

## CONCLUSION

For the foregoing reasons, the Court grants CMI's and Anderson's motions to dismiss plaintiff's claim in Count I for violation of TILA, and this claim is dismissed with prejudice. Plaintiff's remaining claims against both defendants are remanded to Superior Court.  A separate Order will accompany this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  March 11, 2010